# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARRIELL SPROAPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-cv-1208 RWS |
| ) | |
| KEVIN BROWN and RICKEY BROWN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Self-represented Plaintiff Marriell Sproaps brings this civil action for alleged violations of his civil rights under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and waive the filing fee. *See* 28 U.S.C. § 1915(a)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his pleadings under 28 U.S.C. § 1915. Based on such review, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520

(1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**The Amended Complaint and Supplements[1]**

Self-represented Plaintiff filed his amended civil complaint against his prior property manager, Kevin Brown.[2] ECF No. 8 at 1. Plaintiff asserts that the Court has federal question jurisdiction over this matter based on the following: "42 U.S.C. § 3601 through 3604," "Fair

---

[1] Plaintiff filed an amended complaint in this matter (ECF No. 8) before the Court could review his initial complaint (ECF No. 1) under 28 U.S.C. § 1915. Because an amended pleading completely replaces the prior pleading, the Court's discussion will focus on the allegations of the amended complaint and later-filed supplements. *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005).

[2] In the caption of his amended complaint, Plaintiff lists defendants as "Kevin Brown or Rickey Brown," but a different filing from Plaintiff indicates that "Rickey" is just a nickname for Kevin Brown. *See* ECF Nos. 1 at 1; 7 at 3 ("The property manager Rickey Brown who[se] real name is Kevin Brown"). As such, the Clerk of Court will be directed to remove defendant "Rickey Brown" as a defendant in this matter.

Housing Act / Civil Rights Act of 1968," "Missouri Human Rights Act 1968," "emotional distress," and "pain suffering." *Id.* at 3.

Plaintiff states that his apartment was vandalized on June 9, 2022, resulting in damage to the front and back doors, the window above his front door, and a bedroom window. *Id.* at 5. According to Plaintiff, this damage created a "safety hazard," temperature control problems, and a bug problem in the apartment. The day after the vandalization, Plaintiff notified his property manager, defendant Kevin Brown, of the damage. Subsequently, in Plaintiff's own words:

> The property manager [Brown] immediately made request for payment. I stress[ed] to the property manager that the payment for the repairs should come out of the security deposit. I continued to stress how the apartment was inhabitable but Kevin continued to request for payment. Kevin then stated that I have a past due balance of 151.00 from the cash I paid him under the table to move into the unit. Then Kevin stated "I won't make the repairs because your 'Lover boy' caused the damage, so you are responsible for the damage and paying for damage. So I stayed in the inhabitable unit until I finally left February 2023. So for 9 months under management of Kevin Brown, I stayed in the conditions listed above. On August 8, 2022, I did finally come up with the money to pay for the damages but Kevin still refused to make the arrangements to make the unit habitable or livable, even after I paid 616.80 for all damages done to the unit. The property manager Kevin Brown stated that everyone in the apartment complex knows about my "Lover Boy" [-] this statement was video/audio recorded on 06/15/2022[.] Kevin also threaten[ed] to evict me if I'm not out of the unit by June 16, 2023 which would be the next day from June 15th, then the following incident my AC-Unit stopped power/cycling on. The neighbor said that the maintenance did something to the AC-Units.

*Id.*

Based on the Civil Cover Sheet, Plaintiff alleges these facts amount to a civil rights violation. ECF No. 8-1 at 1. Liberally construing self-represented Plaintiff's pleadings, the Court also notes that in a supplement to Plaintiff's original complaint, he described his case as seeking relief under "Section: 3604(f)(2)" for discrimination on the basis of "sex, sexual orientation, [and/or] gender expression." ECF No. 7 at 1. In this filing, Plaintiff asserts that Brown discriminated against him on the basis of his sexuality "by treating him differently and with greater hostility than other tenants" and "by not making necessary repairs to [his] apartment." *Id.* Plaintiff

- 3 -

admits in this document that the damage done to his apartment in June 2022 was done by Plaintiff's "former associate." When Plaintiff requested that Brown repair the damage the next day, Brown refused because Plaintiff's "'lover boy' caused the damage" and Brown "demanded" $616.18 to cover the costs of the repairs. Plaintiff alleges that Brown "refused to have repairs made because he knew or believed that [Plaintiff] had a same-sex partner." Plaintiff further alleges that Brown made the comment about Plaintiff's "lover boy" in order to "intimidate [Plaintiff] and cause [Plaintiff] to feel unsafe or uncomfortable." Plaintiff "believe[s]" that Brown wanted to rent to someone "that did not have [a] same sex partner[]." Plaintiff further alleges that Brown "tried to illegally evict" Plaintiff in November 2022. *Id.*

In addition, Plaintiff filed two USB drives with the Clerk's Office for this case that Plaintiff describes as containing "evidence." ECF Nos. 5-6, 9 & 11. The Court will liberally construe these as exhibits to the amended complaint.[3] The Court has reviewed the information provided on the USB drives. Many of the videos on the drives document the condition of Plaintiff's apartment, showing damage to some doors and windows. Many of the videos are recorded conversations between Plaintiff and others where the other person either does not know they are being recorded, or clearly expresses a desire not to be recorded by Plaintiff. There is no doubt that Plaintiff's apartment needs repairs. There is also no doubt that Plaintiff does not get along with one of his neighbors – although the reason for their dispute is unclear.

As related to the allegations of discrimination in this case, the USB drives do contain a videotaped conversation which appears to be between the parties whereby Brown refuses to do repairs in Plaintiff's apartment until Plaintiff pays him the "$300" owed him "since February" and

---

[3] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

until Plaintiff pays for the damage Plaintiff's "lover boy" caused.  ECF No. 5 (video titled "Rick Brown Threatening … (06_15_2022)").  Plaintiff also included a video of a cellphone displaying a text string conversation between the parties, beginning on "June 10," and informing Brown that Plaintiff has damage to his apartment that needs repair.  *Id.* (video titled "Second conversation with Rick (1)").  Brown responds that Plaintiff is "responsible for all damage done to the unit" and that he can get someone out to fix it as soon as the past due amount is paid and Plaintiff pays for repairs.  Brown also states in this text string that the damage was caused by Plaintiff's "'lover' that was illegally s[t]aying in [Plaintiff's] apartment." *Id.*

Finally, Plaintiff filed an exhibit with photos of written correspondence signed by defendant Brown, regarding money Plaintiff owed Brown.  ECF No. 12.  Based on these exhibits, on January 6, 2022, Brown informed Plaintiff that his past due balance of $151 was now $251, and that if he continued to ignore his past due balance, Brown would file an eviction. *Id.* at 2.  On August 10, 2022, Brown thanked Plaintiff in writing "for taking responsibility for the damages [Plaintiff's] friend cause[d]" to Plaintiff's apartment, and informed Plaintiff that the repair cost was "$616.80."  The notice also informed Plaintiff that he owed an additional pet deposit and monthly amount for having a pet dog in the apartment.  *Id.* at 1.  On October, 11, 2022, Plaintiff received notice from Brown that the pet fees were paid but that Plaintiff needed to sign a new lease before repairs would begin.  *Id.* at 4.

For relief, Plaintiff seeks over 1.7 million dollars in damages, which includes over 94,000 in damages for breach of lease and verbal agreements.  *Id.* at 4-5.

## Related Missouri State Court Litigation

Plaintiff refers to a state court eviction proceeding and cites to a related case "2222-AC12454" on his initially filed 'Original Filing Form.'  ECF No. 1-2.  It appears that Brown did pursue eviction proceedings against Plaintiff in state court in November 2022.  *See 3107 Osceola*

- 5 -

*LLC d/b/a St. Louis Apartment Rentals v. Sproaps*, No. 2222-AC12454 (Associate Circuit Court, City of St. Louis).[4] Based on a review of Missouri Case.net, the State of Missouri's online docketing system, Plaintiff is currently suing defendant Brown's attorney in Missouri state court based on events which occurred during that eviction proceeding. *See Sproaps v. The Chase Law Firm PC*, No. 2322-CC07156 (22nd Jud. Cir., 2023). Based on filings in that matter, after Brown initiated the eviction proceeding against Plaintiff, Brown and Plaintiff reached a verbal agreement sometime before December 6, 2022, that Brown would drop the eviction case in exchange for a rent payment of $612 from Plaintiff. *See also* ECF Nos. 5 (video titled "The conversation with Kevin Brown to drop lawsuit") & 12 at 5. However, by the December 6, 2022 hearing in the eviction case, Brown was no longer the owner of the property occupied by Plaintiff. *See also* ECF No. 9 (video titled "Conversation With Rick About Why He Still Went Thru With The Lawsuit").

## Discussion

After careful review and liberal construction of the allegations of Plaintiff's pleadings, the Court finds that this case should be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B). Plaintiff's pleadings do not provide sufficient factual allegations to support a prima facie case of discrimination under the Fair Housing Act. The Court will not exercise jurisdiction over the remaining state law claims. As such, this case will be dismissed.

### I.    Fair Housing Act Claim

"The Fair Housing Act ("FHA") prohibits property owners and municipalities from blocking or impeding the provision of housing on the basis of race, color, religion, sex, familial status, or national origin." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing 42

---

[4] The Court may take judicial notice of public records when reviewing a complaint. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

U.S.C. § 3604(a)-(b)); *see also Khan v. City of Minneapolis*, 922 F.3d 872, 873 (8th Cir. 2019) (stating that the FHA is "a federal law that generally prohibits making unavailable or denying a dwelling because of a person's race, color, religion, sex, familial status, or national origin" (internal quotation omitted)).  A tenant subjected to discrimination in violation of the FHA can bring a private cause of action for damages.  *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003).  However, the party asserting a housing discrimination claim under the FHA has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence.  *See Radecki v. Joura*, 114 F.3d 115, 116 (8th Cir. 1997).

"Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims."  *Gallagher*, 619 F.3d at 831.  The standard is whether the defendant treated the plaintiff less favorably than others based on his race, color, religion, sex, or national origin.  *Id.*  Plaintiff may allege either direct or indirect evidence showing a link between the alleged discriminatory animus and the discriminatory action. Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision." *Id.* (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).  "Direct evidence does not include stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself."  *Id.* at 831-832 (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006)).

Plaintiff here seems to seek relief under Section 3604(b)[5] which makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color,

---

[5] In one of his filings, Plaintiff cites to Section 3604(f)(2) of the FHA for relief, but this provision protects against discrimination based on a "handicap."  42 U.S.C. § 3604 (f)(2) ("To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap").  As best the Court can decipher, Plaintiff does not allege that he is a "handicap" person in any of the pleadings.

religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Plaintiff asserts that Brown discriminated against him based on his sexuality, sexual orientation, and the fact that he had a same-sex partner. Plaintiff alleges that Brown treated him differently when he treated him "with greater hostility than other tenants" and "by not making necessary repairs to [his] apartment." ECF No. 7 at 1. Plaintiff also argues that Brown's comment about Plaintiff's "lover boy" causing the damage to Plaintiff's apartment, is evidence of sexual orientation discrimination.

     Viewing the evidence as a whole, Brown delayed needed repairs on Plaintiff's apartment due to money – past due money and a dispute as to who was financially responsible for the repairs. Brown warned Plaintiff in writing in January 2022 that he had a past due balance of $251 and that he did not pay it, Brown would seek to evict him. Six-months later in June 2022, Plaintiff's "former associate" caused extensive damage to Plaintiff's apartment. Plaintiff reported the damage to Brown the next day. Brown reminded Plaintiff that he had a past due balance and told him that he needed to cover the cost of repairing the damage. Plaintiff argued that the repair costs should come out of his security deposit. In this conversation, Brown referred to Plaintiff's "associate" who caused the damage, as Plaintiff's "lover boy." On August 10, 2022, Brown gave Plaintiff an itemized list of the repair costs totaling $616.80, thanked him for "taking responsibility for the damages," and informed him of additional costs due to Plaintiff having a pet in the apartment. Around this same time, Plaintiff states that he paid Brown $616.80 for the repair costs. On October 11, 2022, Plaintiff received notice that Brown had received payment for the pet costs but that Plaintiff needed to sign a new lease for repairs to begin. Soon after, Brown initiated eviction proceedings against Plaintiff in state court. However, Brown agreed to dismiss the eviction case in exchange for a payment of $612. By early December 2022, Brown no longer owned the property occupied by Plaintiff. Plaintiff moved out of the apartment in February 2023.

Plaintiff fails to meet his initial burden of providing evidence to support a prima facie case of housing discrimination claim under the FHA by a preponderance of the evidence. *See Radecki*, 114 F.3d at 116. A claim of discrimination under the FHA must be supported by more than an allegation of harm and membership in a protected class to survive initial review. *See Iqbal*, 556 U.S. at 667-670, 680-682 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The only evidence suggesting discrimination based on sexual orientation is a stray discriminatory remark in June 2022 about Plaintiff's former associate. Six-months before this remark, Brown informed Plaintiff about past due money and warned him about eviction. Plaintiff asserts that Brown treated him differently by treating him with more hostility than other tenants and not making repairs. Plaintiff provides no examples of other tenants who had repairs completed quicker and who did not have the same sexual orientation as Plaintiff. Plaintiff even admits that repair work was performed on his air conditioning unit at some point during his tenancy.

Plaintiff's allegation of a stray discriminatory remark by Brown in June 2022 and a lack of timely repairs, is not enough to state a claim under the FHA. There is no evidence linking defendant Brown's discriminatory remark to any discriminatory conduct. The discriminatory remark was related to a dispute between the parties as to who caused, and was therefore financially responsible, for damage to Plaintiff's apartment. The evidence suggests that repairs were not done on Plaintiff's apartment because he owed money to Brown. Plaintiff alleges that Brown wanted him out so that he could rent to someone without a same-sex partner, but at one point, Brown agreed to drop eviction proceedings against Plaintiff in exchange for money owed.

Although Plaintiff reasonably may have found Brown's remark offensive, isolated or stray remarks are not normally treated as evidence of discrimination, especially when they are not tied to management policy or any discriminatory impact.  *See Gallagher*, 619 F.3d at 832 ("Appellants cite many statements that purportedly show the 'discriminatory attitude' of Housing Code enforcement in the City. Nearly all of these statements are not direct evidence of racial discrimination because they have little or no connection to [the decisionmaker's] policy or action."); *see also Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112 (8th Cir. 2017) ("A plaintiff who fails to allege facts at the pleading stage ... demonstrating a causal connection [between a policy and a disparity] cannot make out a prima facie case of disparate impact.") (quoting *Tex. Dep't of Hous. Cmty. Affs. v. Inclusive Communities Project, Inc.*, 135 S. Ct 2507, 2523 (2015)).

Plaintiff has not alleged sufficient facts to state a plausible claim of sex discrimination under the FHA.  Plaintiff's FHA claim will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

**II.     State Law Claims**

To the extent that Plaintiff is also seeking relief under Missouri state laws, like the Missouri Human Rights Act and Missouri tort law regarding emotional distress, the Court declines to exercise jurisdiction.  Because Plaintiff's federal claims will be dismissed, all remaining pendent state claims will be dismissed, as well.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a matter of discretion).

**Conclusion**

Plaintiff's motion to proceed *in forma pauperis* will be granted and the filing fee will be waived. However, Plaintiff's civil complaint against his former property manager for relief under the Fair Housing Act will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B). As a result, Plaintiff's motion for appointment of counsel will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED** and the filing fee is waived. *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court shall remove defendant "Rickey Brown" as a defendant on the docket sheet in this matter because "Rickey" is a nickname for defendant "Kevin Brown."

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint because the amended complaint fails to state a claim upon which relief can be granted. Plaintiff's claims are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 25th day of January, 2024.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE